# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7455 | **DATE** | 1/8/2002 |
| **CASE TITLE** | Barbara H. Vines et al. Vs. Board of Education of Zion School | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Board's motion for judgment on the pleadings is granted. Plaintiffs' motion for judgment on the pleadings is denied. Judgment is entered for the Board, and the case is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | Number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 9 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | JAN 0 9 2002 | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | 02 JAN -9 AM 11:13 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
JAN 09 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA H. VINES and ROBERT W. HINES,
on behalf of Kathryn Vines and Themselves,

Plaintiffs,

v.

BOARD OF EDUCATION OF ZION SCHOOL
DISTRICT NO. 6

Defendant.

No. 01 C 7455

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Barbara and Robert Vines (Vines), filed suit, *pro se*, against defendant, the Board of Education of Zion School District No. 6 (Board), on behalf of themselves and their daughter, Kathryn Vines (Kathryn), alleging that the Board's dress code violates the United States Constitution. Presently before this Court are the parties' motions for judgment on the pleadings.[1]

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b). *Gatx Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). The court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Judgment is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 2232 (1984).

Central Junior High School instituted a dress code effective the 2001-2002 school year. The

---

[1] Plaintiffs filed a motion for judgment on the pleadings in response to the Board's motion for judgment on the pleadings.

10

dress code states that it was instituted "to create a school environment that fosters the academic and social growth of its students." The students are required to dress in solid black, solid white, or a combination of black and white clothing. Logos, patches, pins, imprinted slogans, words and designs on the clothing are not permitted. Allowable tops include T-shirts, blouses and shirts. Black and/or white jeans, shorts, and appropriate skirts are allowed. Students who violate the dress code may be asked to return home and change, may be required to wear their gym uniform, and may be "subject to additional consequences".

Students new to the school are permitted a "grace period" to comply with the dress code. Students who are unable to comply with the dress code due to financial hardship are accommodated or otherwise provided "appropriate resources". Students whose parents or legal guardians object to the dress code on religious grounds are not required to comply with the dress code provided that the parent or legal guardian present a signed statement of objection detailing the grounds for the objection to the Board.

Plaintiffs allege that the Board's dress code violates Kathryn's First Amendment right of free speech and freedom of religion and infringes upon the Vines' "right to self-regulation".

A. Standing

The Board first argues that plaintiffs lack standing to bring the cause of action because they lack an "injury in fact".

A plaintiff must demonstrate "injury in fact" in order to establish standing in a cause of action. *Vermont Agency of Natural Resources v. United Sates*, 529 U.S. 765, 771 (2000) (*Vermont*). Injury in fact is harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical". *Vermont*, 529 U.S. at 771 (internal quotations and citation omitted). Injury in fact is more than an injury to a cognizable interest -- it requires that the party seeking relief be itself among the injured. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (*Lujan*).

Here, the cognizable interest of the plaintiffs includes both the freedom of speech and the

2

parents' interest in the care, custody, and control of their children. At the pleading stage, general allegations of injury resulting from defendant's conduct are sufficient because the court presumes that the 'general allegations embrace those specific facts that are necessary to support a claim.' *Lujan*, 504 U.S. at 561, quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990). Here, if the allegations of the complaint are true, then the plaintiffs are arguably among the injured. *See Tinker v. Des Moines Independent Comm. School Dist.*, 393 U.S. 503, 506 (1969 (freedom of speech right applied to schools) (*Tinker*); *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (Due Process Clause protects parents' right to make decisions concerning their children). Accordingly, the plaintiffs have standing to bring these causes of action.

Plaintiffs also allege that the dress code impairs their free exercise of religion. In the complaint, plaintiffs allege that the dress code does not have an "opt out" clause based on religious beliefs. The dress code does have an opt out clause based on religious beliefs, and plaintiffs admit such in their response. Plaintiffs assert for the first time in their response to defendant's motion that the dress code still violates the free exercise of religion because they were informed that the letter needed to opt out for religious beliefs must be on official church stationery; therefore, only "officially recognized" churches can apply for the exemption. Plaintiffs' complaint contains no such allegations; plaintiffs' response cannot properly be considered to be an amended complaint. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Even if plaintiffs' new allegations could be so construed, plaintiffs do not allege that Kathryn cannot comply with the dress code because of her, or her parents', religious beliefs or that they attempted to opt out of the dress code based on their religious beliefs. Therefore, plaintiffs still have not asserted any injury in fact of their free exercise of religion, and that claim shall be disregarded in deciding the motion.

B. First Amendment Claim

The First Amendment forbids the abridgment of speech, including the spoken or written word

3

and some forms of conduct. *Texas v. Johnson*, 491 U.S. 397, 405 (1989) (*Texas*). In determining whether particular conduct possesses sufficient communicative elements to fall within the protection of the First Amendment, the court focuses on whether "a[n] intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410-11 (1974). For example, the Supreme Court recognized the expressive nature of students wearing black armbands to protest the American military involvement in the Vietnam War. *See Tinker*, 393 U.S. at 505-06.

Defendant argues that the dress code does not regulate speech, citing to *Olesen v. Board of Education of School Dist. No. 228*, 676 F.Supp. 820 (N.D.Ill. 1987). In *Olesen*, the court held that a student's expression of "individuality" through the wearing of an earring did not constitute a message protected by the First Amendment. *Olesen*, 676 F.Supp. at 822. Importantly, that court also found that the student did not credibly claim that the wearing of an earring made any other statement. *Olesen*, 676 F.Supp. at 821.

In the instant case, the plaintiffs do not set out a particularized message that Kathryn intends to convey by wearing clothing not permitted by the dress code. Kathryn apparently wishes only to express her individuality. But, assuming argumendo, that she has alleged a choice of dress that could constitute speech, a further determination must be made.

The initial step in determining if the content neutral dress code impermissibly restricts Kathryn's speech is the determination of the character of forum where the restriction is in effect. *See Muller v. Jefferson Lighthouse School*, 98 F.3d 1530, 1537 (7th Cir. 1996) (*Muller*). Speech in a nonpublic forum is subject to significantly greater regulation than speech in a traditional public forum. *Muller*, 98 F.3d at 1537. "[S]chool facilities may be deemed to be public forums only if school authorities have by 'policy or by practice' opened those facilities 'for indiscriminate use by the general public' or by some segment of the public, such as student organizations." *Hazelwood Sch. Dist. v. Kuhmeie*, 484 U.S. 260, 267 (1988) (*Hazelwood*), citing *Perry Educ. Assn. v. Perry Local Educators'*

4

*Assn.*, 460 U.S. 37 (1983). Where "school facilities have been 'reserved for other intended purposes, communicative or otherwise', and no public forum has been created", the school may impose reasonable restrictions on the speech of students and teachers. *Muller*, 98 F.3d at 1537, quoting *Hazelwood*, 484 U.S. at 267. Speech restrictions in a nonpublic forum school that are 'reasonably related to legitimate pedagogical concerns' do not violate a student's free speech. *Muller*, 98 F.3d at 1537-38, quoting *Hazelwood*, 484 U.S. at 273.

A school is generally considered a nonpublic forum for purposes of the First Amendment. *See Lambs Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, (1993); *Hazelwood*, 484 U.S. at 267; *Muller*, 98 F.3d 1539; *Hedges v. Wauconda Comm. Sch. Dist. No 118*, 9 F.3d 1295, 1302 (7th Dist. 1993).

In the instant case, plaintiffs do not allege, nor can it be inferred, that Central Junior High School has been opened for "indiscriminate use" by the general public. Accordingly, Central Junior High School is a nonpublic forum, and the appropriate test is whether the dress code is "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273; *Muller*, 98 F.3d at 1537-38.

"Pedagogical concerns" include the structured transmission of a body of knowledge in an orderly environment and the inculcation of civility and traditional moral, social, and political norms. *Muller*, 98 F.3d 1540. Here, the Board's policy states that a student's dress must meet health and safety standards and may not be disruptive to the educational program. School uniforms may be instituted if uniforms "would contribute to attaining and maintaining a positive and productive school learning environment." The Board states that the students' dress code improves the safety of schools and the academic and social growth of students by discouraging gang affiliations, reducing peer pressure and socio-economic competition; by improving students' self-concepts, classroom behavior, and academic performance; and by reducing vulgar, profane, or obscene disruptions to the educational process. These constitute legitimate pedagogical concerns, and the dress code's restrictions of Kathryn's expression are reasonably related to these legitimate pedagogical concerns. Accordingly,

the Board's dress code constitutionally regulates Kathryn's First Amendment free speech rights in the nonpublic forum of her school. *See Hazelwood*, 484 U.S. at 273, *Muller*, 98 F.3d at 1539-40; *see also Littlefield v. Forney Independent Sch. Dist.*, 268 F.3d 275, 287 (5th Cir. 2001); *See Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 443 (5th Cir. 2001); *Phoenix Elementary Sch. Dist. No. 1 v. Green*, 943 P.2d 836, 839 (Ct. of App. Ariz. 1997) (collectively finding school dress code did not violate students' right to free speech).

C. Fourteenth Amendment Claim

The Vines also allege that the dress code "constitutes an unreasonable infringement upon our family's right to self-regulation". In their response to the Board's motion, the Vines argue that the school must share the responsibility of dressing and grooming with a student's parents.

The Fourteenth Amendment's Due Process Clause includes the fundamental liberty "interest of parents in the care, custody, and control of their children". *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). However, parental rights are not absolute in the public school context and can be subject to reasonable regulation. *See, e.g., Runyon v. McCary*, 427 U.S. 160, 177 (1976) (recognizing no parental right to educate children in private segregated academies); *Fleischfresser v. Directors of Sch. Dist. 20*, 15 F.3d 680, 690 (7th Cir. 1994). A rational-basis review is the appropriate standard in analyzing parental rights in the context of public education and school dress codes. *See Littlefield*, 268 F.3d at 291; *Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 177-79 (4th Cir. 1996); *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2nd Cir. 1996).

As found above, the Board's dress code is rationally related to the Board's interest in fostering the education of its students and furthering the legitimate goals of improving student safety.

For the foregoing reasons, the Board's Motion for Judgment on the Pleadings is granted. Plaintiffs' Motion for Judgment on the Pleadings is denied. Judgment is entered for the Board, and the case is dismissed.

Dated: January 8, 2001

JOHN W. DARRAH
United States District Judge